We now move to our next case. This is such a great acronym. I have no idea. What do you think? Re SBRMCOA? Good morning, your honor. Maria Tankinson Hodge. I represent the petitioner in this matter. SBRMCOALLC, that stands for Sapphire Beach Resort and Marina Condominium Owners Association. I thank the court for hearing me this morning. I would ask leave to reserve four minutes for rebuttal. Four minutes. So granted that. Very good. Go ahead, please. Thank you, Judge. This is a case I just noticed actually, as I looked down at my notes, that is before you again, after 10 years, following the first instance in which you vacated and remanded to the district court with a, from our point of view, quite clear mandate on how to proceed to correct an error. That was the first remand in 2007, I believe. The second was in 2014. We're before you again, your honor, because we submit the district court still has not complied with your mandate. The issue before the district court and before this court presented as a result of the fact that there was a water supply agreement entered into between a board of directors of the condominium and the sponsor. Let me ask you this question. So in the 2016 opinion, I was trying to look for the date, but it's not unimportant exactly. The district court's 2016 opinion on page 15, there seems to be a fairly focused statement as to what it is the district court was looking at. The statement on 15, I'm looking at the bottom, which I'll read into the record in a moment, is preceded by a discussion specifically about the water supply agreement, et cetera, et cetera. And the preceding sentence says, therefore, the water supply agreement did not validly amend the declaration. While that conclusion may appear on its face to resolve the question of whether the water supply agreement was an amendment to the declaration, the court understands the third circuit mandate as a direction to fully address the spirit of the dispute. There's more language going on. In fact, there's a quote to the earlier case by Judge Jordan, and then thus the court's inquiry is not over. Obviously, there's more of a discussion about the relationship and so forth. Why is that not compliance with the mandate? Your Honor, the mandate instructed the district court judge to determine whether the water supply agreement constituted an unauthorized amendment to the declaration, and then to determine whether the board was authorized in law and, in fact, to enter into the water supply agreement. Why would it have been unauthorized? I'm sorry, Your Honor. Why would it have been unauthorized? Is it because it didn't have, it wasn't voted on by two-thirds of the members of the association? Yeah, because the declaration requires a vote of two-thirds of the owners to change it, and because the declaration specifically adopts a particular set of rules for how water will be provided to owners, and this agreement changed, amended that assurance to owners about how they would be provided water and how they would be charged. Is that what Judge Gomes was supposed to determine? In other words, was that procedure followed? Well, certainly that was one thing he needed to determine, but it's now, I think, undisputed that procedure was not followed. His opinion clearly recognizes there's no evidence there was ever a vote of the owners, let alone a supermajority. This was simply done by the board and the sponsor. But the places where he failed to abide by the mandate, if I may, is when he went, when he said in his opinion that effectively because the board and the sponsor could not effectively amend the declaration, they lacked the power to do that, that the court could not have meant for him to decide if this was an amendment to the declaration, because effectively he was saying by definition it could not be an amendment to the declaration, and the board is lacking the power to amend. Actually, I'm sorry, that's exactly what Judge Jordan said, right? That's what Judge Gomes said, that it couldn't. No, Judge Jordan said at the end of the SMERCOA II that the district court, we also order the district court to determine whether the water supply agreement constituted an unauthorized amendment of the declaration of condominium, and based upon this determination, whether the board was authorized in law and in fact to enter into the water supply agreement. Right. Exactly. That's the mandate, but, Your Honor, if I may, that is not what the district court judge did. In fact, what he said was the court could not have meant for me to decide if this was an amendment to the declaration because parties entered into it who lacked the authority to make that change. Actually, if you look at the district court's opinion, and I'm looking at page 20 of page 50, the district court sets this up. If section 3J of the declaration takes precedence over 2C, and for the benefit of everybody, 3J specifically talks about who bears the expense in the declaration, and 2J talks about common expenses as a general matter, then the board is agreeing to section 1C of the water supply agreement would have effectuated an unauthorized amendment, and it says to the bylaws, but by context, it must mean the declaration. And the next page, the court then does its analysis and says section J1 of the declaration specifically addresses the allocation of expenses, therefore, with regard to potable water, 3J1 of the declaration, not 2C, governs. And as a result, if you take its thought process, it came to the conclusion that because it governs, it would have effected an unauthorized amendment. So didn't it fulfill its obligation? So the reason he did not fulfill his obligation, Judge, is because even though he agreed that they couldn't amend the declaration, he did not specifically find that this was an unauthorized amendment. He said it was ultra-virus, but then he said that because there is an arbitration clause in this agreement, and because the board had the power to enter into arbitration clauses, he could still send it to the arbitrator to determine the validity of the agreement. And your real complaint is severability. That's, I think, what brings you here is that the district court looked at an individual clause of the water supply agreement, said, I think, from its sort of thought, if this, then that, it concluded if the expense on water takes precedence over the general, there is a conflict with the water supply agreement, that would be a tantamount to an unauthorized amendment. You can't have that. But I'm going to do a severability analysis. I'm going to sever out that part of the water supply agreement and send the rest of the dispute to an arbitrator. Isn't that what you're really upset about, is the district court just didn't reject the whole agreement? Well, Your Honor, we do think the judge reached the wrong conclusion, but we also don't think that he fulfilled the mandate. Because the second part of the mandate was first decide if this was an unauthorized amendment, which I think effectively he conceded, even though he said the court could not have expected me to decide if this was an amendment. But having said that, he was then to decide whether the board had the authority to enter into the agreement. That's point two of the mandate. But he, but point two, page 21, appellate record 51 site, on that basis, the court holds the board undertook ultra-virus action when it agreed to section 1C111 of the water supply agreement as the board could not declare potable water to be a common expense. So it did determine by using fancier language, by saying ultra-virus instead of unauthorized, it in fact rendered a conclusion, didn't it? It rendered a conclusion, Judge, but it didn't finish the conclusions required to meet your mandate, if I may say so. So having decided it was unauthorized, which is, from our point of view, not in dispute, it was unauthorized. He should simply have declared that it was an unauthorized amendment to the declaration exactly as the mandate said. But he should then have proceeded to say, having been directed to reach the second point, was the board then authorized to enter into this agreement? Because that's the issue the court has said twice now, must be decided by the court and not the arbitrator. Roberts. I thought he decided that the board had no authority, based on the language that Edges Schwartz just read. But if the board then did not have authority, what's the next step? If the board had no authority, then it cannot go to arbitration, because I assume you cannot implement the arbitration clause of the agreement. Yes. Our position is that if the court had followed both parts of your mandate, it would simply have said it was an unauthorized amendment, the board did not have the authority to enter into the agreement, and therefore, the request, which was before the court, to forward the matter to arbitration under the agreement could not have been granted and that motion should have been denied. I think I follow you now. So it should not have gone to arbitration and then what? It should not have. And then the case has gone forward. It is a case with other issues. This is just the case with the district court. Correct. Now, but should we send it back for yet another round and indicate that, you know, you did not follow Judge Jordan's dictated opinion? Is it the matter of the court misinterpreting our language, or is it that we're not being sufficiently clear? Well, Respectfully, I think the court was very clear. I think it was simply that the district court failed to perform its responsibilities under these combined prongs of the mandate, namely to decide the board did not have the authority to enter into this agreement in light of the conclusion that it was and, therefore, simply to decide that the agreement was not, had not been properly the wording of Sandvik, that it challenges the authority of the signatory to have entered into the agreement, not whether the agreement is void. Am I mispronouncing it? I really don't know. I didn't hear that, but I just wanted to tell you. This case is a torturous history. To me, it's complex. It's got a lot of moving parts. So I need to have it very simple. And to have it simple, I understand that our mandate to the judge was, was the board's action authorized? Is that right? Was, well, effectively, yes. Was it authorized, and, therefore, were they entitled to enter into the agreement? Were they empowered to enter into this agreement? Correct. You say, no, they were not authorized because they didn't have the votes of the 67% of the unit owners did not agree. And it has to be some, an amendment to the declaration has to be approved by the unit members. By 67%. That was not done. That was not done. The judge acknowledges that. And, therefore, the board had no authority to enter into this contract. Correct. And we don't think it needs to be sent back with another set of instructions to, to try again. I think the fact that the district court judge has found that this was ultra-virus, therefore, in effect, an unauthorized amendment of the declaration, it requires the conclusion that they. At that point, stop. They didn't have the authority to enter into the agreement. That's all it takes to conclude this part of the case. But the district court, what it chose to do was look at the agreement, found a provision that was problematic, and then, in its judgment, found it to be severable. If your dispute is that, that you think the district court needed to void the whole thing rather than just a clause, isn't that a direct appeal issue, not a failure to follow the mandate? Well, I don't think it is a, a direct appeal issue, Your Honor, because I think that the second part of the mandate, which was to determine whether they had the right to enter into the agreement, was not really followed here. And, and the severability issue, I think, effectively, he's trying to give that issue to the arbitrator, but the court has said the, the first issue, the pivotal issue that the court must decide is whether the signatory had the authority to enter into the agreement in the first place. And we say that on this record, with his findings, and the undisputed reality that there was never a two-third vote makes the conclusion that they, the signatory did not have authority to enter into the agreement unescapable. And, and one he was obligated to reach and, and didn't. Presumably, it could be done, couldn't it? In other words, were this case to go back, it could be submitted to a vote of unit members who then can determine whether to approve it or not. Well, Your Honor, it is certainly true that as a brand new transaction, someone could ask the owners if they would want to agree to this or some other agreement, but I, but I will say this to the court, from the point of view of Virgin Islanders who, whose water supply doesn't come through the city pipelines, like most people in the States, we have to have a special source of water. Knowing that you can control the price of your water, how you pay for it, whether you're paying just for the water you use, if you're careful and conservative, or whether you're paying a share of hundreds of neighbors' costs of water if they're wasteful, is a fundamental part of deciding where you live. So the chances that two-thirds of these owners would vote for an agreement where they're not going to be in control of their cost of water and their unit, they're going to have to pay a prorated share of every one of these other hundreds of people's uses, even if they're, shall we say, wasteful with their water, is quite unlikely. The declaration of the association specifies what the rate is for per unit, is that right? Specifies it to be a reasonable rate provided by the sponsor and that it is only to be charged by the individual user's consumption, not as a common charge. Let me ask you this question, though. When the, in order for us to remand, we have to make a determination with regarding to the analysis being grossly incongruous. So one of our earlier statements on this issue said, when the proceedings on remand result in an outcome that is grossly incongruous with the purpose for which the remand was ordered, the spirit of the mandate is violated. I think both Judge Schwartz and I have pointed to language that one could argue is congruous with the letter and spirit of the mandate having been followed. How is this standard that's required for us to remand of grossly incongruous met here? Your Honor, I would say that it is met because of the fact that in this case, the judge specifically disregarded the directive to determine whether the board had the right to enter into an agreement that it had already found directly violated the declaration. We don't, this, the notion that it could effectively send to the arbitrator the possibility of severance is inconsistent with its responsibility to find. It's responsibility to find on this record that the board did not have the authority to enter into this agreement. Didn't the district court though only find that the allocation of the water expense from the individual unit owners to the common, that's the only point that it found to be unauthorized by the declaration. It didn't render any opinion on other provisions, did it?  And we think that's another respect in which the district court failed to honor your mandate. Because your opinions and your mandates had focused the court on the fact that the arguments were not only that, although I think that is so fundamental, it is dispositive, that is that changing people to having water billed by, as a common charge instead of an individual charge is essentially a complete change in the living arrangements. But the other parts of the argument, that it was not a reasonable charge, that the declaration required that it be reasonable, that it could not be for in excess of one year. He simply chose not to address those issues. What he said in his language was, at least one provision of the agreement is ultra-virus. Why he elected not to talk about the other arguments, I can't answer it. But we can see that his goal was, once again, to send the matter to arbitration, notwithstanding this court's directive that he determine if the agreement constituted an unauthorized amendment to the declaration, whether the board had the authority to enter into that. Thank you so much. Thank you. Good morning, Your Honor. Neil Bowman for Respondents, Speech-Side Associates, TSG, and TSG. Your Honors, the, I've listened to your comments, and I want to address them directly. The background legal context to this case are the two Supreme Court cases of Buckeye Cashing v. Cartagena and Primate Paint Corp. v. Flood and Conklin. Basically, what those cases say is that, as a matter of law, if there is a question of authority to enter into an agreement, that's a matter for the court. If it's a question of the issue of the validity of the agreement as a whole, that's a provision for the arbitrator. And Judge Gomez specifically talked about that on the other. The arbitrator doesn't determine whether there was a contract or not. The court needs to determine that. And what Primate Paint and Buckeye say is that, regardless of whether there's a severability clause, the arbitration clause is severable. And really, what the issue is, is did the person who signed the contract have authority to do that? And the questions as to the substantive validity in Buckeye, for example, the issue there was the fact that there was a contract involving money lending that was alleged to be usurious and to violate Florida consumer protection laws. Go back to Ms. Hodges' central point. Did the board have the authority to enter into this contract? Yes, it did. And it had the authority because the arbitration clause itself was severable. And because why do you have to go to the arbitration clause to determine whether there's authority to enter into a contract? OK. Should you do that first, rather than put the cart before the horse? Your Honor, I'll answer the question as you want it to be answered. The answer is that, and as addressed previously by Judge Gomez, that the board has authority to deal with issues relating to water. It doesn't have authority to do it in a manner that's contrary to the declaration. This contract did more things other than change the manner in which charges for water consumed by individual unit owners were to be provided. And, Your Honor, if- Well, let's go, can you just help me understand this a little bit better? There is a declaration of the association. Right. I tend to view as akin to the founding document. It's really what sets the table for all of the duties and responsibilities of the association. So it's a big deal. And so, as I understand it, to change any of the provisions in this big deal document, you gotta have two-thirds of the unit owners say, OK, we go along. And so, the question that we, on two or three occasions, have sent back to the district court is, what did the board have the authority to make this change? And the answer that Judge Gomez gave is no. But the agreement did much more than that. What the agreement did was it provided a mechanism. It was, really what it was, it was an assignment, a permitted assignment under the Declaration 3J1, which says, the sponsor or its successors or assigns shall provide water and shall charge in this manner. The primary purpose of the agreement was to effectuate an assignment from Bayside to the condominium association of the right and obligation to supply water and to impose charges for that. There is nothing wrong with that, with essentially that provision of the agreement. I'm misunderstanding part of this, because I thought one of the purposes of that agreement was to jack up the water rate to the unit, various units, from two cents a gallon to five cents a gallon. Actually, Your Honor, that's not correct. The charge to the unit owners at the, essentially, it was a three-step process. TSG provided water through a reverse osmosis plant that it owned to, essentially, to Bayside. Bayside, in turn, resold that water to the individual unit owners and charged them based on consumption. The price from TSG to Bayside was in the vicinity of two cents a gallon. The price from Bayside to the individual unit owners was five cents a gallon. What this agreement established was that the price from, and there has been evidence in the record below, that five cents is a reasonable charge. It's what most truckers on the island charge to deliver water. So that the five cent charge was the charge to the unit owners that there was no challenge to before this agreement. This agreement provided that the charge to the unit, the charge to, basically, to Bayside for the water after this would be five cents a gallon. The resolution, and I want to bring to the Court's attention the resolution that's Joint Appendix 85, and it describes what the agreement does and it authorizes the execution of the agreement by the President, Mr. Polliner. But wasn't our mandate to ask the district court to decide whether the board was authorized in law, in fact, to enter the water supply agreement? And doesn't the opinion only address really one issue and says at least this, and I think the language is, this conclusion that at least one provision is ultra-virus. So it's only deciding on one part of it. Do you understand that's implicitly saying the other terms are authorized? Well, it decided more than one. The one year, contrary to counsel's argument, the one year issue, the court did decide. And what was the decision, that it was authorized? No, the decision was that the one year limitation did not apply to this agreement because it only applied where Bayside was acting as the agent for the association. So that means it wasn't a declaration, it wasn't an amendment to the declaration. Correct. Was it authorized? Did the board have the authority to enter that sort of agreement? Well, because it didn't violate the declaration, it had the authority. The board had the authority to do that. The board also had the authority to accept the assignment of the provisions for providing water and assignment from Bayside. I know that's your position as an advocate. Remember, our role is pretty circumscribed here because we're trying to determine whether or not the district court complied with our mandate. And even as you may have an advocacy point of view, but right now we're asking you to guide us through the district court opinion and say if that's what you want to do is defend the district court and say it absolutely complied, how did it do that? And it absolutely complied, Your Honor, because and it quoted to Buckeye saying essentially if there's one invalid provision, that doesn't invalidate the whole agreement or make the whole agreement void. And it referred the issues relative to the invalidity of the agreement to the arbitrator. It's a question of invalidity versus authority. And certainly if the only, I would concede that if the only thing that this agreement did was modify, attempt to modify the declaration, it would be void and it would be beyond their authority, but it did much more than that. If there's no authority, why isn't it invalid? If there's no, I don't understand the question, Your Honor. If there's no authority to enter into the agreement, then why isn't that itself there is authority to enter into the agreement for many of the purposes. But there was one provision of the agreement that it did not have the authority to enter into, so what the district court did was it said, I find that it didn't have authority to enter into this provision, and this provision is ultra virus. But that doesn't end the inquiry because these other provisions, all of the other provisions are not violative of the declaration, and the board had the authority to do that because they did not attempt or purport to affect an amendment. It's only where there's an attempt to affect an amendment that we run into any question of authority. And let me try one more because I'm still thinking about the order rights. Would an agreement that would raise the water rate from 2 cents a gallon to 5 cents a gallon not change or be contrary to the declaration of the association? No, Your Honor, because the declaration doesn't set the price of water at 2 cents. It talks about the sponsor, and now that's been assigned, talks about the sponsor setting a reasonable rate. There may be an issue of whether or not the rate set for the charges to the owners was a reasonable rate. That rate was set in the resolution that is at page 85 in paragraph 3, and it's not part of the agreement. It's part of the resolution authorizing the agreement. That rate was set by the association at 6 cents. If I ask you this question, and maybe I'll stop here, if really a yes or no, did the board have the authority to amend the declaration of the association, yes or no? No. The board did not have that authority. And if that were the only issue And then you say further, here, there was no such amendment. Well, I agree with the district court that since the board did not have authority to amend the declaration, that provision is ultra-virus and can't be implemented. But that doesn't mean that the entirety of the agreement is void, nor does it mean that the board did not have the authority to enter into the balance of the agreement. And that's precisely what the Supreme Court held in PrimaPaint and in Buckeye, and was recognized by this court in Sandvik and in SBRMCOA1. The question is whether or not the agreement, the only thing that it did was amend the declaration. And Your position in the district court concluded that the board has the authority to enter the water supply agreement, except for the provision that shifted the expense from individual to common. And therefore, segregated that off under the severability clause. And so that's your position of how it complied with the mandate? Absolutely, that's correct, Your Honor. And I think he was very clear. This is actually a very well-reasoned opinion and a very careful opinion by Judge Gomez, who after all of this time and having it sent back a number of times, wanted to make sure he complied with the mandate. Not only to the letter, but also to the spirit of the mandate. And the issue really is, you know, the other provisions of the agreement. And does the one provision that is ultra-vires, does that provision essentially render the entire agreement ultra-vires? And it doesn't. And that's been, that's the jurisprudence of the Supreme Court in PrimaPaint and Buckeye. Is the method by which unit owners are charged for water usage, that is whether it's per unit being charged for what you use, or whether it's common usage, spoken about in the declaration of the association? Yes, Your Honor, and that's the provision that Judge Gomez found to be invalid. It's an interesting side light, and I'm, I'm, I'm, I'm. But he, he found it invalid. But if, if you enter into a contract to change that, then are you not then changing, then the question is, are you authorized? Is the board authorized to change? The board was not, I don't think there's any, I have no dispute with the decision of the district court that the board was not authorized to effect that modification. But there are, but the significant part is that there were other parts of the agreement. I will, I, I just want to. Because I'm still trying to understand, there's a lot of moving parts. But if the issue to that is yes, then how can it go to arbitration? It goes to arbitration be, because number one, under Buckeye and Prime of Paint, the arbitration clause is by law severable, even in the absence of a severability clause, but there is a severability clause that is paragraph 15. The guts of this agreement, the most significant part of this agreement, is the assignment by Bayside to the COA of the right to supply water to the unit owners and to charge the unit owners for that water. Now the interesting part, and I do this very briefly. I actually think there's a mistake in the documents, but putting that aside. What actually happened after all of this is that the, the condominium association charged the unit owners based on consumption and not based on the percentage interest that are set up in the declaration. And so really there's two pieces of the agreement. One, the condominium association needs to get water. It agrees to buy that water from Bayside. It agrees to pay five cents a gallon. That's one thing. Buying it at five cents a gallon is actually appropriately a common expense. Then the second piece is that the association needs to sell the water to the unit owners. In the resolution and in the agreement, it described that charge as also being a common expense. That's where the flaw is. That's the incorrect part, notwithstanding that the association actually charged based on consumption, even though that's not what the agreement says and that's not what the resolution says, but that's what actually happened. But those two components, what's valid about the agreement and which shouldn't be upset under the severability clause, and I want to reiterate Buckeye and PrimaPaint because they're absolutely clear, the challenges to the validity of the agreement based on anything other than formation go to the arbitrator. And the provisions of one, the 3J1 expressly provide for assignment. The assignee was the association. Those rights needed to be transferred. The association, in fact, exercised those rights and it's severable and under all of the jurisprudence applicable to this case, the remainder of the agreement is valid and the mandate was complied with by Judge Gomez by addressing the ultra-vires issue and deciding what happens at that point. Thank you so much. A few points. First, I would like to say that the water supply agreement, which counsel characterizes as covering many things and just having this incidental effect on how people would receive and pay for water, in fact, is fundamentally constructed around the idea of being able to change the cost of water from an individual bill to a common charge. And requiring the association to pay a cost that this court, in its own opinion, in SBRMCOA1, already explained in some detail, was really an extraction of a way to pay off the sponsor's debt to TSG. That the suggestion now that there's somehow in the record going to be something that says this was a reasonable charge is inconsistent with the opinions this court has already entered in this case. It seems as hard as that in any case the individual units are being charged individually. It's not common charge, it's not been implemented. Are you talking about now? This entire agreement is history now. The Condominium Association had to set up its own supply of water. They had to find a way to get water from someone else. They're not getting water from TSG and they are being charged individually. But the issue here is that there's this historic period of time during which this contract was invalidly entered in violation of the declaration and there are claims remaining out of that historic period that people are still trying to collect from the association. People, essentially Mr. Goldman's clients, are still trying to collect from the association for the past. At the present time, the arrangement has changed and they create their own water. Why is Mr. Goldman's separability argument not sufficient to carry the day? So I don't think it carries the day, Your Honor, because what we submit to the court is that the case is mentioned, Prima Payton, Sandvik, I think essentially asked the court to look at whether the person who entered into the agreement had the authority to do so. And that first question, the court says, is for the court and not for the arbitrator. And in this case, when the fundamental part of the agreement is something that it has already been determined the board did not have the power to do, it follows that under the authority of those cases, the court should have determined that the agreement was invalid. The fact that they could have agreed to an arbitration clause validly in some other kind of agreement is, from my point of view, a red herring. Yes, the board could agree to arbitration clauses in other contexts. That would not be beyond their power. But the fact that they put one in the middle of an invalid agreement, it seems to me, doesn't save the agreement or send it to the arbitrator. It's still for the court to decide, first and initially, under that authority. Did a person with authority to do so enter into this agreement? The court must decide. And on the basis of what Judge Gomez found already, I think we have an unavoidable conclusion that they didn't have the authority to enter into that. They didn't have the authority because it would have changed the declaration of the association in what specific way? Specifically provisions in the declaration of paragraph 3.1.1, which is in the appendix at page 212, which provides that potable water shall be supplied by the sponsor to the individual unit owners and that they shall be required to pay to the sponsor the charge therefore established. Namely, the charge for the water provided to their individual units and to them as individuals. But the agreement changed it how? It converted the provider. To TSG and the condominium association and it converted the recipient from the individual to the association and the charge from an individual obligation to pay for water actually consumed. To a common expense where everyone shared all the cost of consumption of water. And it also violated the provision in the same section that only reasonable charges could be imposed. I do want to just follow up on one thing. You keep saying that the district court didn't make findings about the authority of the board to enter the agreement. But even at the end, it says none of the provisions in the water supply agreement that the Sapphire Bay contends are beyond the authority of the board or under the arbitration clause ultra virus. So it did, again, we're very focused on whether they fulfilled the mandate. And so I'm not sure how we can say that it was,  How is it, I still don't see it's gross to the Congress. When the court said to the judge, you must find, you must determine whether this was an unauthorized amendment to the declaration. And then whether the board had the authority to enter into it. And when the judge having determined that it was, that this agreement contained in its substance, a violation of the declaration and was unauthorized. He was required to determine if the board had the authority to enter into it. And the fact that he referred to the arbitration clause, judge, just to finish this thought, to the extent that that meant he was saying, the board had the right to enter into arbitration clauses generally. Could not be consistent with the letter and spirit of the mandate here, which was to determine if in this agreement, the mere presence of an arbitration clause somehow could save what was in fact a violation of the declaration and therefore an unauthorized act. I understand your argument. Thank you. Okay, wonderful. Thank you, counsel. We'd like to ask that you order a transcript and share the cost, that would be helpful to us in our decision making. Yes, thank you so much. Great.